UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DANA HEIMDAHL CHERNAULT,

    Plaintiff,

v.                                                       Case No: 8:24-cv-1502-KKM-AEP

CERES ENVIRONMENTAL SERVICES INC.,

    Defendant.
_____

## ORDER GRANTING MOTION TO DISMISS

Dana Chernault sues Ceres Environmental Services Inc. ("Ceres") for discrimination under the Equal Pay Act ("EPA"), disparate treatment and hostile work environment under the Florida Civil Rights Act ("FCRA"), and breach of oral contract. 2d Am. Compl. (Doc. 8). Ceres moves to dismiss. MTD (Doc. 10). The motion is granted with leave to amend on all counts.

I. **BACKGROUND**

This action is about alleged workplace discrimination. Chernault, a female, alleges that she was hired by Ceres in November of 2020 as a director of safety and risk management. 2d Am. Compl. ¶ 10. When she was hired, Chernault received compensation and benefits below fair market value and below that "of her comparators within [Ceres]. These comparators included other Director Level individuals. . ." *Id*. ¶¶ 11–12. After two years of working at Ceres, Chernault received a job offer from a different company for a higher salary, which was at fair market value. *Id*. ¶ 13. In response to the job offer, Ceres allegedly orally agreed to increase Chernault's salary and bonus plan, prioritize safety, and fill open

positions in Chernault's department to keep her employed at Ceres. *Id*. ¶¶ 15–16. According to Chernault, Ceres increased her salary but failed to implement the remainder of the oral agreement. *Id*. ¶ 17. Ceres's broken promises regarding safety and risk management ultimately culminated in Chernault's resignation on August 7, 2023. *Id*. ¶¶ 17, 19–20. Chernault sued Ceres in state court, and Ceres removed to federal court after Chernault added a claim under the EPA. Not. of Removal. (Doc. 1) at 1–2. Ceres moved to dismiss. *See* MTD.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), a pleading requires "a short and plain statement of the claim showing that the pleader is entitled to relief." This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Id.* (quoting *Twombly*, 550 U.S. at 557).

"To survive a motion to dismiss for failure to state a claim, a complaint must contain sufficient factual matter…that is plausible on its face." *Id*. (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on its face when a "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id*. "[W]e take the factual allegations in the complaint as true and construe them in the light most favorable

to the plaintiff" when considering a motion to dismiss. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).

## III.   ANALYSIS

### A. EPA Claim

An EPA claim requires showing that "an employer pays different wages to employees of opposite sexes 'for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.'" *Arrington v. Cobb Cnty.*, 139 F.3d 865, 876 (11th Cir. 1998), *as amended* (May 28, 1998) (citing *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974)). In a comparator analysis, "[i]t is the 'actual job content,' not job titles or job descriptions that is controlling." *Blackman v. Fla. Dep't of Bus. & Pro. Regul.*, 599 F. App'x 907, 911 (11th Cir. 2015) (citing *Arrington*, 139 F.3d at 876). Ceres contends that Chernault made "scant allegations" regarding a comparator since she did not identify a male comparator nor demonstrate similar job duties. MTD at 4-5.

Chernault's "formulaic recitation of the elements of [the EPA] cause of action" cannot survive the instant motion. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Her allegations contribute little "further factual enhancements" outside of the bare "boilerplate" elements for an EPA claim. *Id.* (quoting *Twombly*, 550 U.S. at 557). The only factual support for her allegations is that "comparators included other Director Level individuals within the organization." 2d Am. Compl. ¶ 11. But she neglects to explain how the other director-level positions "require[] equal skill, effort, and responsibility, and which are performed under similar working conditions." *Arrington*, 139 F.3d at 876 (citing *Corning Glass*, 417

3

U.S. at 195); *see Arafat v. Sch. Bd. of Broward Cnty.*, 549 F. App'x 872 (11th Cir. 2013) (dismissing EPA claim because Plaintiff "did not plead the facts comparing her skill, effort, and responsibility levels to [her named comparators] who were allegedly paid more than her.")  Nor does she elaborate on the "actual job content" of her own role. *Blackman v. Fla. Dep't of Bus. & Pro. Regul.*, 599 F. App'x 907, 911 (11th Cir. 2015).[1]

In response, Chernault argues that Ceres is "on notice that Plaintiff's alleged comparators are administrative employees performing the function of a department head," and that in any event, such a "fact-intensive question [is] best deferred to summary judgment or a jury." [2] Resp. (Doc. 16) at 2. This argument is not persuasive. At the pleading stage, a claim must have "facial plausibility," meaning there is "*factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556) (emphasis added). Here, it is impossible to tell whether there is facial plausibility, because Chernault does not explain how the individuals she mentions are similar comparators, let alone identify them besides

---

[1] The law regarding the level of detail required in pleading comparators in employment discrimination claims is somewhat contradictory. *Compare Uppal v. Hosp. Corp. of Am.*, 8:09-CV-634-T-33TBM, 2011 WL 2631869, at *3 (M.D. Fla. July 5, 2011), aff'd, 482 Fed. Appx. 394 (11th Cir. 2012) (dismissing Title VII claim because plaintiff "state[d] [comparators] in a conclusory fashion" and did not "allege any facts to support these conclusory allegations") *with Alvarez v. Lakeland Area Mass Transit Dist.*, 406 F. Supp. 3d 1348, 1354 (M.D. Fla. 2019) (denying motion to dismiss Title VII and FCRA claims because "even if Plaintiff's allegations regarding comparators were insufficient, that would not justify dismissal of these claims."). But in any event, *Iqbal*'s requirement to plead facts that at least make the claim "plausible on its face" suggests a plaintiff is required to do more than simply making a catch-all statement with regard to similarly situated individuals. 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570).

[2] Chernault cites *Blackman v. Fla. Dep't of Bus. & Pro. Regul.* for the proposition that "whether 'Department Heads' constituted similarly situated was better left for the jury," and that summary judgment in that case was overturned in favor of the employee, but that is a misstatement of the holding. 599 F. App'x at 911. The Court affirmed summary judgment in favor of the employer. Regardless, this action is at the pleading stage, so a different standard applies.

the general descriptor of "Director Level individuals." 2d Am. Compl. ¶ 11. Individuals at the "Director Level" can have a wide variety of responsibilities, duties and job descriptions. Though the Court "accept[s] the complaint's factual allegations as true" at the pleading stage, here, there are no factual allegations for the Court to accept as true. *Pielage*, 516 F.3d at 1284. Therefore, Chernault's EPA claim is dismissed with leave to amend.

### B. FCRA Disparate Treatment Claim

Florida courts apply Title VII's framework to claims under the FCRA since the FRCA was modeled on Title VII. *Harper v. Blockbuster Entertainment Corp.*, 139 F.3d 1385, 1387 (11th Cir.1998). A prima facie case of disparate treatment requires Plaintiff show the following: "(1) she is a member of a protected class; (2) she was subjected to adverse employment action; (3) her employer treated similarly situated male employees more favorably; and (4) she was qualified to do the job." *Gamboa v. Am. Airlines*, 170 F. App'x 610, 612 (11th Cir. 2006) (quoting *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir.1999) (citations omitted)). Importantly, these elements are an "evidentiary standard. . . not a pleading requirement." *Caetio v. Spirit Coach, LLC*, 992 F. Supp. 2d 1199, 1211 (N.D. Ala. 2014) (quoting *Swierkiewicz v. Sorema*, 534 U.S. 506, 510, (2002)).

For similar reasons that Chernault's EPA claim fails, so too does her FCRA disparate treatment claim. Chernault's allegations simply repeat a cause of action under the FCRA—in her own words, she was " 'paid less' then the director-level male employees. . . performing 'equal work on jobs that required equal skill, effort, and responsibility under similar working conditions.' " Resp. to MTD at 3. It is true that, unlike the "exacting standard of substantial equality of positions set forth

5

in the [EPA]," the standard under Title VII of similarity between male and female-occupied jobs is "more relaxed." *Miranda v. B&B Cash Grocery Store, Inc.*, 975 F.2d. 1518, 1529 (11th Cir. 1992). But Chernault's allegations must be "sufficient to give [Ceres] fair notice of what [her] claim is. . ." *Caetio*, 992 F. Supp. 2d at 1211. On the face of the complaint, identifying other "director-level male employees" does not give fair notice to Ceres of who exactly Chernault alleges was similarly situated and paid more than her. *See id*. As noted above, the job duties and responsibilities of directors can vary widely within any given company. Therefore, Chernault's FCRA disparate treatment claim is dismissed with leave to amend.

### C. FCRA Hostile Environment Claim

To sufficiently plead a hostile work environment claim, a plaintiff must allege: (1) that he belongs to a protected group; (2) that he has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic of the employee, such as national origin; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or direct liability. *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002) (citation omitted). "A hostile work environment claim under Title VII is established upon proof that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter

6

the conditions of the victim's employment and create an abusive working environment." *Id.* at 1275 (quotation omitted)).

Ceres's arguments appear to fall in to two categories. The first is that Chernault's allegations do not support a conclusion that the alleged harassment was based on her sex; the second is that the allegations do not support a conclusion that the alleged harassment was "sufficiently sever or pervasive as to alter the terms and conditions of employment and create a discriminatorily abusive working environment." *Id*; MTD at 9-14. For both of those reasons, Chernault's hostile work environment claim cannot survive a motion to dismiss.

Regarding the first, Chernault's allegations do not support a conclusion that the alleged harassment was based on her sex. She alleges: "[p]rior to beginning her employment, [Ceres's] recruiter belittled [her] credentials and skills on the basis of her sex"; "[Ceres's] owner held a similar belief that female employees are less capable"; and "[Ceres's] principal owner berated [her] for frivolous perceived issues that male employees would not have been subjected to the same reprimand." 2d Am. Compl. ¶s 44-46. Chernault neglects to specify exactly *how* Ceres and their employees "belittled her credentials," nor what led her to believe that Ceres's owner "held a similar belief that female employees are less capable." Again, a complaint is insufficient "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Regarding her allegation that she was "berated" in ways that "male employees would not have been subjected to the same reprimand," Chernault adds "[t]o make matters worse, [Ceres's] principal owner threw a safety helmet at [her] in front of other workers because he didn't like its aesthetics." 2d Am.

7

Compl. ¶ 46. This contains no reference to Chernault's gender—only the principal's apparent preferences in certain aesthetics. Chernault responds to this argument by suggesting her general allegation that she was "subject to a hostile work environment based upon sex" helps to "clarify[y] the motivating factor behind each of the allegations describing a hostile work environment. . ." Resp. at 4. Chernault's theory of pleading is not in accord with *Iqbal*'s prohibition on mere 'labels and conclusions,' and is therefore insufficient. 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

Similarly, Chernault's factual allegations do not support an inference that the alleged harassment was "sufficiently sever or pervasive as to alter the terms and conditions of employment and create a discriminatorily abusive working environment." *Miller*, 277 F.3d at 1275. Specific instances alleged include: an employee claiming Chernault did not know the business because she was "a girl"; derogatory comments about her physique; being called a b*tch and a c*nt; threatened by a coworker that he would bury her body on his property; and being referred to as the "safety chick." 2d Am. Compl. ¶s 48-50. While these comments certainly seem inappropriate, "[t]he Supreme Court has instructed that Title VII is only implicated in the case of a workplace that is 'permeated with discriminatory intimidation, ridicule, and insult.' " *Miller*, 277 F.3d at 1277 (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993)). Chernault argues that Ceres ignores the "cumulative effect of these examples." Resp. at 4. But similar allegations of a handful of inappropriate comments have not survived motions to dismiss. *See, e.g., Thompson v. City of Miami Beach, Fla.*, 990 F. Supp. 2d 1335, 1341 (S.D. Fla. 2014) (dismissing racially based hostile work environment claim under Title VII because

8

African-American plaintiff did not state a claim by pleading that his employer said the following: "off brand ni*ger," "that fuc*ing ni*ger out there in the truck with his snitching ass," "when they get a little position then those ni*gers sellout," because they were uttered over many months and lacked severity); *Alhallaq v. Radha Soami Trading, LLC*, 484 Fed. Appx. 293 (11th Cir. 2012) (ruling that Muslim plaintiff did not sufficiently plead a hostile work environment claim based on religious discrimination under Title VII by alleging that defendant remarked she was "dirty" and for her "to go to Hell" and "burn in Hell," combined with the playing of Christian gospel music). Therefore, Chernault's hostile work environment claim is dismissed with leave to amend.[3]

**D. Oral Contract Claim**

Oral contracts are subject to the same "basic" formation requirements as written contracts, namely, "offer, acceptance, consideration and sufficient specification of essential terms." *St. Joe Corp. v. McIver*, 875 So. 2d 375, 381 (Fla. 2004). Thus, "[t]o state a cause of action for breach of contract, a Plaintiff is required to allege facts that, if taken as true, demonstrate that the parties mutually assented to 'a certain and definite proposition' and left no essential terms open." *Riti Fin., LLC v. Patel*, 386 So. 3d 1058, 1060 (Fla. 5th DCA 2024) (quoting *Plumbing Serv. Co. v. Progressive Plumbing, Inc.*, 952 So. 2d 1211, 1213 (Fla. 5th DCA 2007)). Where essential terms of an agreement remain open, subject to future negotiation, there can be no enforceable contract. *Suggs v. Defranco's, Inc.*, 626 So. 2d 1100, 1101

---

[3] Ceres contends Chernault's EPA and FCRA claims are time barred. Because she does not sufficiently state a claim for either cause of action, those arguments need not be addressed. In any event, a cursory review suggests they are probably not entirely time barred, but Ceres is certainly free to continue to assert this argument, assuming it can do so in good faith.

9

(Fla. 1st DCA 1993) (citing *Central Properties, Inc. v. Robbinson*, 450 So.2d 277 (Fla. 1st DCA 1984), *modified on other grounds*, 468 So.2d 986 (Fla.1985)).

Chernault's oral contract claim fails because its essential terms lack specificity. In particular, Chernault alleges she and Ceres agreed to "implementation of a bonus plan expected to pay her up to twenty percent of her base salary," "actively work[] in good faith towards filling the open positions within [Chernault]'s department," and "prioritizing safety instead of ignoring safety violations and/or risky behavior that could lead to death and serious injury to employees." 2d Am. Compl. ¶ 59. At this point, the alleged oral contract looks more like an "agreement to agree," at least on the aforementioned terms. *John Alden Life Ins. Co. v. Benefits Mgmt. Assocs., Inc.*, 675 So. 2d 188 (Fla. 3d DCA 1996). The terms—such as "prioritizing" and "actively work in good faith"—are not "definite and certain proposition[s]." 2d Am. Compl. ¶ 59; *Riti Fin., LLC*, 386 So. 3d at 1060. Further, the bonus plan was subject to future negotiation since it was only "expected to pay her up to twenty percent of her base salary," and there was no method for computing the bonus plan. *Suggs*, 626 So. 2d at 1101 (citing *Central Properties, Inc.*, 450 So.2d at 277). In sum, Chernault failed to plead the essential terms of the oral agreement with sufficient specificity, so this claim is also dismissed with leave to amend.[4]

Additionally, Ceres's statute of frauds argument fails. According to this argument, because Chernault does not allege specific timelines for the provisions in the purported oral contract, "these elements. . .were not intended or capable of

---

[4] Ceres asserts that Chernault failed to adequately plead a breach. MTD at 21-23. There is no need to address that argument at this time because Chernault's present allegations do not adequately allege an oral contract in the first instance.

being performed within one year. . ." and her claim is therefore barred by Florida's Statute of Frauds. MTD. at 23-24. But under Florida law, "in order to avoid the state of frauds, the agreement must have been capable of performance within one year of its 'making.'" *LaRue v. Kalex Const. & Dev., Inc.*, 97 So. 3d 251, 254 (Fla. 3d DCA 2012) (quoting *First Realty Inv. Corp. v. Gallaher*, 345 So.2d 1088, 1089 (Fla. 3d DCA 1977)). At this point it seems clear that Ceres could have performed the actions in the purported oral contract within a year of its making, and therefore whether Chernault alleged a specific time frame for performance is inapposite to the question of capability. The statute of frauds therefore does not bar the oral contract claim.

IV. **CONCLUSION**

Accordingly, the following is **ORDERED:**

1. The Motion to Dismiss (Doc. 10) is **GRANTED IN PART**.
2. Chernault's Second Amended Complaint (Doc. 8) is **DISMISSED** without prejudice. No later than October 15, 2024, Chernault may file an amended complaint.
3. The Stay (Doc. 18) remains in effect until further notice.

**ORDERED** in Tampa, Florida, on October 1, 2024.

TOM BARBER
UNITED STATES DISTRICT JUDGE*

---

* Signed by Judge Thomas P. Barber to expedite the resolution of this motion. This case remains assigned to Judge Kathryn Kimball Mizelle.